**J. DAVID NICK (CAL SBN 157687)**
**LAW OFFICES OF J. DAVID NICK, A Professional Legal Corporation**
**1111 E. TAHQUITZ CANYON WAY SUITE 115**
**PALM SPRINGS, CA  92262**
**Telephone: (760) 778-8250**
**Email:  jdavidnick@lawyer.com**

**RUSSELL L. GOODROW (SBN 248921)**
**GOODROW LAW OFFICE**
**345 Franklin Street**
**San Francisco, CA  94102**
**Telephone:  415-655-9478**
**Facsimile:  415-276-1760**
**Email:  russ@goodrowlaw.com**

**Attorneys for Plaintiff**
**BRENDA L CAMPBELL, as Executor of the ESTATE OF CARL E WEIDNER**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRENDA L CAMPBELL, as Executor of the ESTATE OF CARL E WEIDNER**<br><br>    **Plaintiff,**<br><br>**vs.**<br><br>**CARNIVAL CORPORATION, CARNIVAL PLC, and PRINCESS CRUISE LINES LTD.,**<br><br>    **Defendants.** | **Case No.**<br>**COMPLAINT FOR DAMAGES**<br><br>1.  **NEGLIGENCE – MARITIME COMMON LAW SURVIVAL ACTION**<br>2.  **FRAUD – MARITIME COMMON LAW SURVIVAL ACTION**<br>3.  **INTENTIONAL INFLICTION EMOTIONAL DISTRESS – MARITIME COMMON LAW SURVIVAL ACTION**<br>4.  **NEGLIGENT INFLICTION EMOTIONAL DISTRESS – MARITIME COMMON LAW SURVIVAL ACTION**<br>5.  **NEGLIGENT MISREPRESENTATION – MARITIME COMMON LAW SURVIVAL ACTION**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff BRENDA L CAMPBELL, as Executor of the ESTATE OF CARL E WEIDNER, brings this action against Defendants, PRINCESS CRUISE LINES LTD.

("PRINCESS"), CARNIVAL CORPORATION, and CARNIVAL PLC (collectively, "CARNIVAL") and alleges:

## THE PARTIES

1. At all times relevant hereto, Decedent CARL E WEIDNER was a resident of Lehigh County, Pennsylvania.

2. Decedent CARL E WEIDNER was a passenger onboard the Motor Vessel ("M/V") GRAND PRINCESS from February 21, 2020, until Decedent's disembarkation on or about March 9, 2020 in the State of California, County of Alameda.

3. Decedent died on March 26, 2020 due to COVID-19, which he contracted while a passenger onboard the M/V GRAND PRINCESS, sailing on the high seas and or within three nautical miles of the coast of the State of California.

4. Plaintiff BRENDA L CAMPBELL is the Executor of the Estate of CARL E WEIDNER and was at all times relevant hereto, a resident of Lehigh County, Pennsylvania; BRENDA L CAMPBELL brings a maritime common law survival action on behalf of Decedent's estate.

5. Plaintiff BRENDA L CAMPBELL is the Decedent's surviving adult niece.

6. Defendant CARNIVAL CORPORATION was incorporated in 1972 in Panama and has its headquarters in Miami-Dade County, Florida.

7. Defendant CARNIVAL PLC was incorporated in 2000, in Wales, United Kingdom. It also has its headquarters in Miami-Dade County, Florida.

8. Defendant PRINCESS CRUISE LINES LTD is incorporated in Bermuda, with its headquarters in Los Angeles County, City of Santa Clarita, State of California.

9. At all times mentioned in this complaint, CARNIVAL CORPORATION, CARNIVAL PLC, and PRINCESS advertised, marketed, sold, and profited (directly or indirectly) from and owned, controlled, and operated the cruise ship, M/V GRAND PRINCESS.

## ALTER EGO/PIERCING THE CORPORATE VEIL

10. Defendants CARNIVAL CORPORATION, CARNIVAL PLC, AND PRINCESS are alter egos and/or agents of each other such that the corporate form should be disregarded.

11.     CARNIVAL CORPORATION and CARNIVAL PLC operate as a single economic enterprise. They share a senior executive management team and identical Boards of Directors. Both Carnival Corporation and Carnival PLC share a single headquarters in Miami-Dade County, Florida.

12.     As described by CARNIVAL CORPORATION in a filing with the Securities and Exchange Commission ("SEC"), "Carnival Corporation and Carnival PLC operate a dual listed company ('DLC'), whereby the businesses of Carnival Corporation and Carnival PLC are combined through a number of contracts and through provisions in Carnival Corporation's Articles of Incorporation and By-Laws and Carnival PLC's Articles of Association."

13.     Plaintiff brings this lawsuit against CARNIVAL CORPORATION and CARNIVAL PLC individually, but because the entities work as alter-egos and/or agents of one another, Plaintiff refers to them collectively throughout this Complaint as "CARNIVAL."

14.     In a federal criminal plea agreement signed by CARNIVAL in 2016, CARNIVAL described PRINCESS as one of several "operating lines" that together comprise the "Carnival Group" of companies. CARNIVAL stated that Princess and the other cruise ship operating lines are semi-autonomous entities within the Carnival Corporation and Carnival PLC corporate umbrella.

15.     In that 2016 federal criminal plea agreement, CARNIVAL stated that it "currently monitors and supervises environmental, safety, security, and regulatory requirements for Princess and other Carnival brands. Carnival Corporation & PLC operate a total of 101 ships visiting 700 ports around the world, including most major ports in the United States."

16.     CARNIVAL has ownership and control over PRINCESS, which is organized under Holland America Group within CARNIVAL. CARNIVAL has declared in filings with the SEC it wholly owns PRINCESS as a subsidiary.

17.     CARNIVAL and PRINCESS share the same Board of Directors and most of the same executive officers and use the same assets.

18.     CARNIVAL exerts oversight, control and domination over PRINCESS'S business and day-to-day operations.

//

**JURISDICTION**

19.     This Court has Admiralty subject matter jurisdiction under 28 U.S.C. § 1333 and 46 U.S.C. § 30101 subdivision (a) [Admiralty Extension Act] as this case involves maritime torts perpetrated by Defendants against the Decedent while on Defendants' cruise ship and while that cruise ship was less than three nautical miles from the coast of the State of California. The type of incident and injuries suffered by Plaintiff and Decedent had the potential to impact maritime commerce, as Decedent died because of exposure to COVID-19 aboard the cruise ship upon which Decedent was a paying passenger.

20.     This Court has jurisdiction under diversity of citizenship, 28 USC §1332(a)(1), because Plaintiff's claim exceeds $75,000 and Plaintiff is and was at all relevant times the citizen of a state different from Defendants.

21.     This Court has personal jurisdiction over Defendants, who each conduct substantial business in this district.

22.     Defendant PRINCESS headquarters are in the City of Santa Clarita, Los Angeles County, California, which is within the Central District of California.

23.     Upon information and belief, CARNIVAL, including by and through its subsidiary, PRINCESS, markets cruise vacations to California residents and employs thousands of California residents to work at its California headquarters. The Court has personal jurisdiction over CARNIVAL because CARNIVAL is authorized to do business in California, conducts substantial business in California and some of the actions giving rise to this Complaint took place in California.

24.     While each of the Defendants purports to be a party to the Passage Contract, which purports to name the Central District of California as proper venue for actions against Defendants, Plaintiff does not concede the enforceability of the Passage Contract and alleges such a contract was secured with the use of fraud in that the decedent was promised safety when defendants knew they would not provide it.

**VENUE**

25.     Venue in the Northern District of California is proper under 28 U.S.C. § 1391 because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction and the acts complained of occurred in this district.

**FACTUAL BACKGROUND**

**I.     The COVID-19 Pandemic and the Cruise Industry**

26.     In December of the year 2019, a new strain of Coronavirus known as COVID-19 or SARS-CoV-2 was first observed in humans in China. The virus quickly spread through China and Asia and has caused a global pandemic. Infection with COVID-19 is associated with symptoms such as fever, a dry cough, shortness of breath, infection, pneumonia, and is fatal in about 3% of cases. However. the infection presents particularly high risks of death or severe symptoms to individuals over the age of 65 and those who are immunocompromised or with pre-existing conditions, such as respiratory illness or heart conditions.

27.     At the time of drafting this complaint, the United States agency Center for Diseases Control states there have been 2,932,596 cases and 130,133 deaths in the United States because of COVID-19.[1] In the City and County of San Francisco, at least two deaths were due to COVID-19 infections contracted while onboard the M/V GRAND PRINCESS—the ship owned and operated by Defendants.

28.     On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency.

29.     In early February 2020, experts in the European Union, led by epidemiologist Dr. Christou Hadjichristodoulou, released guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols.[2] Specifically, the guidelines directed that, if a COVID-19 case occurs, close contacts of the infected individual should be quarantined in their cabin or on shore, and "casual

---

[1] See, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html
[2] Interim Advice for Preparedness and Response to Cases of Acute Respiratory Disease at Points of Entry in the European Union (EU) / EEA Member States (MS): Advice for ship operators for preparednessand response to the outbreak of 2019-nCoV acute respiratory disease, Feb. 3, 2020, https://www.gac.com/491364/siteassets/aboutgac/ coronavirus/eu-interim-advice_2019-ncov_maritime_4_2_2020_f.pdf (last visited April 6, 2020); *see also* Matt Apuzzo, Motoko Rich and David Yaffe-Bellany, The New York Times, *Failures on Diamond Princess Shadow Another Cruise Ship Outbreak*, March 8, 2020, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruiseship.html (last visited April 6, 2020).

contacts" should be disembarked.[3]

30.     Defendants CARNIVAL and PRINCESS represent that they commit to "the health, safety, and security" of their passengers and promote their business as one that "always strives to be free of injuries, illness and loss."[4] They further assert that they "[s]upport a proactive framework of risk mitigation in the areas of HESS [Health, Environment, Safety, Security] aimed at preventing, monitoring and responding to threats."[5]

31.     However, in or before early February 2020, Defendants learned of an outbreak of COVID-19 aboard the cruise ship the M/V DIAMOND PRINCESS, which is operated by CARNIVAL and PRINCESS. The outbreak originated on the DIAMOND PRINCESS while the vessel was docked in Yokohama, Japan. Ten cases were originally diagnosed, and that number rapidly escalated to over 700 cases—over one-fifth of the passengers onboard. Well after CARNIVAL and PRINCESS learned of the first case aboard the ship, Defendants worked to "keep the fun going" by "encouraging" guests "to mingle."[6]

32.     To date, at least 13 of the M/V DIAMOND PRINCESS' passengers have died because of COVID-19. At least two of these fatalities occurred before February 19, 2020. [7]

33.     In a February 18, 2020, update issued in response to the crisis aboard the M/V DIAMOND PRINCESS, the Center for Disease Control (CDC) stated that "the rate of new reports of positives [now] on board, especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk."[8]

---

[3] Healthy GateWays, Algorithm for decision making in response to an event of a suspect case of COVID-19, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).
[4] Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, https://www.carnivalcorp.com/leadingresponsibly/health-environment-safety-security-sustainability-policy-governance/ (last visited April 7, 2020).
[5] Carnival Corporation & PLC Health, Environmental, Safety, Security, and Sustainability Corporate Policy, https://www.carnivalcorp.com/static-files/0b8327aa-c3be-4022-a1a5-a6dad7123af7 (last visited April 7, 2020).
[6] Austin Carr and Chris Palmieri, Bloomberg, *Socially Distance This: Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going*, April 16, 2020, https://www.bloomberg.com/features/2020-carnival-cruisecoronavirus/ (last visited April 20, 2020).
[7] *See* The New York Times, *Japan Reports 2 Deaths Among Cruise Ship Passengers*, Feb. 19, 2020, https://www.nytimes.com/2020/02/19/world/asia/china-coronavirus.html (last visited April 6, 2020).
[8] *See* Centers for Disease Control and Prevention, Update on the Diamond Princess Cruise Ship in Japan, Feb. 18, 2020, https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html (last visited April 6, 2020).

34.     In February of the year 2020, CARNIVAL also operated a voyage on the M/V RUBY PRINCESS, from New Zealand to Australia. News reports suggest that in mid-to-late February, Defendants became aware of COVID-19 cases onboard the M/V RUBY PRINCESS. Despite this information, CARNIVAL operated a second voyage on the M/V RUBY PRINCESS, immediately following the New Zealand-to-Australia voyage. Since the vessel docked in Australia on March 19, 2020 over 600 passengers who were on the Ruby Princess have tested positive for the virus and at least 10 have died. Australian authorities have announced a criminal investigation into the matter.

35.     As of filing this complaint, cruises run by CARNIVAL have been identified as responsible for over 1,500 positive COVID-19 infections, and almost 40 deaths.

## II.     Defendants Failed to Prevent or Address the Viral Outbreak on the M/V Grand Princess

36.     On February 11, 2020, Defendants commenced a roundtrip voyage from San Francisco to Mexico aboard the M/V GRAND PRINCESS. On or around February 19, 2020, Defendants knew at least one passenger suffering from COVID-19 symptoms onboard the M/V GRAND PRINCESS.

37.     According to CARNIVAL's Chief Medical Officer, Grant Tarling, MD, MPH, Defendants believed the infected passenger was already carrying the virus when he boarded the M/V GRAND PRINCESS on February 11, 2020.[9] Despite their knowledge of COVID-19, Defendants chose to not employ any passenger medical screening methods that were available to them at that time.

38.     Dr. Tarling reported that the infected passenger sought treatment from the medical center onboard the M/V GRAND PRINCESS on February 20, 2020. The passenger reported suffering from "acute respiratory distress" for about a week before seeking medical treatment. This information would have triggered mandatory reporting under 42 CFR 71.1 *et*

---

[9] Thomas Fuller, John Eligon, and Jenny Gross, The New York Times, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronaviruscruise-ship-oakland-grand-princess.html (last visited April 7, 2020).

*seq.* and constitutes a "hazardous condition" per 33 CFR § 160.216.[10]

39.     At least three other passengers on the M/V GRAND PRINCESS's Mexico trip suffered from COVID-19 symptoms while on the vessel, thus exposing other passengers to the virus. At least 100 passengers who traveled on board the M/V GRAND PRINCESS tested positive for COVID-19, and two passengers who traveled on the M/V GRAND PRINCESS's Mexico trip died after disembarking. One fatality was the first reported death caused by COVID-19 in the State of California.

40.     On February 21, 2020, the M/V GRAND PRINCESS arrived at port in San Francisco and some passengers from the Mexico trip disembarked.

41.     Approximately 62 passengers, at least 2 of whom were ill, and over 1,000 crew members remained onboard the M/V GRAND PRINCESS to continue traveling on the ship's next voyage to Hawaii. Defendants chose against implementing effective COVID-19 screening and medical examination procedures for its crew and passengers who remained onboard and planned to travel on the Hawaii voyage.

42.     Defendants did not initiate effective measures to sanitize or disinfect the vessel in-between voyages, and—once again—implemented no effective procedures for screening or testing new passengers boarding the ship for the Hawaii voyage. .

43.     Defendants did not notify passengers scheduled to board the vessel on February 21, 2020, that passengers from the prior Mexico trip had reported COVID-19 symptoms, or that passengers and crew remaining on board the M/V GRAND PRINCESS had been exposed to and might be infected with and/or carrying the virus.

44.     On February 12, 2020 Defendants negligently and or intentionally misrepresented to the Decedent that the M/V GRAND PRINCESS was safe to board. Defendants mailed a communication to Decedent's Pennsylvania home entitled "Emergency

---

[10] Section 160.216 requires that "[w]henever there is a hazardous condition … on board a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge must immediately notify the nearest Coast Guard Sector Office…" A "[h]azardous condition means any condition that may adversely affect the safety of any vessel … or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve … injury *or illness of a person aboard...*" 33 CFR § 160.202 (emphasis added).

Notification". Defendants knew or should have known this communication contained false information, assertions of fact and implied claims that it was safe to board Defendants' ship and that the Decedent would and did rely upon the "Emergency Notification" to his determinant. A true and correct copy of the "Emergency Notification" is attached here as **Exhibit 1** and incorporated by reference. The false statements in that "Emergency Notification" were: that Defendants were "monitoring the situation with coronavirus that originated from China", that Defendants' "medical experts were working with global health authorities", and that "all guests will be subject to pre boarding health reporting and enhanced screening at check in". Using these false express and implied statements about the safety of boarding its ship, Defendants lured Decedent from the safety of the Pennsylvania home onto the unsafe M/V GRAND PRINCESS, in the State of California. Concealing the dangerous circumstances aboard the M/V GRAND PRINCESS that lead to Decedent's death from COVID-19 as plead, Defendants never told the Decedent of the known dangers before boarding. These acts also voided any passenger contract requiring venue be in the Central District of California.

45.     On February 21, 2020, Decedent CARL WEIDNER embarked onto the M/V GRAND PRINCESS, and the ship departed the same day. The vessel sailed to Hawaii and made multiple stops on the Hawaiian Islands.

46.     On February 25, 2020, when Decedent was in the midst of the Hawaii trip aboard the M/V GRAND PRINCESS, Defendants sent emails to passengers, who disembarked from the San Francisco-to-Mexico trip on February 21, 2020. The email alerted the past passengers about their potential exposure to COVID-19 during their time on the cruise. Defendants decided not to send the same emails to the M/V GRAND PRINCESS passengers onboard the ship on February 25, 2020.

47.     On February 29, 2020, the M/V GRAND PRINCESS left Hawaii.

48.     Defendants chose not to increase sanitary precautions onboard the M/V GRAND PRINCESS until on or about March 3, 2020.

49.     On or around March 4, 2020, CARNIVAL and PRINCESS decided to inform the M/V GRAND PRINCESS passengers – including Decedent –of COVID-19 cases in boat passengers who traveled on the ship's Mexico trip. Early in the morning on March 4, 2020,

passengers onboard the M/V GRAND PRINCESS received a health advisory explaining that the ship would no longer be traveling to Ensenada, Mexico, as originally scheduled, and would instead return directly to San Francisco. The advisory alerted passengers to the investigation of a "small cluster of COVID-19 cases in Northern California connected to" the M/V GRAND PRINCESS's Mexico trip, and informed passengers of their potential exposure to the virus.

50.     The advisory further stated that COVID-19 causes "mild illness in about 80% of cases," and that only "[a]bout 20% of people develop more severe symptoms." Although the advisory recognized that COVID-19 can have a heightened risk for "older adults," at various points it compared the virus to "regular flu." Notably, many passengers aboard most cruise ships, including Decedent, are "older adults." On some ships two-thirds of the guests are over 65 years old.

51.     The March 4, 2020 health advisory suggested that passengers traveling on the Hawaii trip reported suffering from COVID-19 symptoms, and instructed other passengers experiencing – or if they had during the trip experienced – symptoms "of acute respiratory illness with fever chills or cough" to immediately contact the ship's Medical Center. Finally, the advisory recommended that passengers wash their hands, use hand sanitizer, avoid contact with those suffering from respiratory illness, cover their noses and mouths when coughing and sneezing, and avoid touching their eyes and face. It made no recommendations for quarantine or social distancing measures.

52.     The March 4, 2020, health advisory was signed by Grant Tarling, MD, MPH, the Group Senior Vice President and Chief Medical Officer for CARNIVAL and its subsidiary PRINCESS. Tarling is the co-author of an article about respiratory viruses onboard cruise ships. The study acknowledged that cruise ships "represent a potential source for introduction of novel or antigenically drifted influenza virus strains to the United States" and that cruise ship characteristics, such as "close quarters and prolonged contact among travelers on ships and during land-based tours before embarkation, increase the risk of communicable disease transmission."[11]

---

[11] Kimberly B. Rogers, MPH, Shahrokh Roohi, MPH, Timothy M. Uyeki, MD, *et al.*, *Laboratory-based respiratory virus surveillance pilot project on select cruise ships in Alaska, 2013-2015*, Journal of Travel Medicine, 1-6, 2 (2017).

53.     Individuals who had continued from the prior leg of the cruise to and from Mexico began cabin-based quarantine for the first time on or around March 4, 2020. Defendants cancelled large public gatherings but continued hosting other events that followed the "Princess Patter," including Formal Night and its associated dinner.

54.     Because of the COVID-19 outbreak on the M/V GRAND PRINCESS, Governor Gavin Newsom declared a state of emergency on March 4, 2020 to manage the COVID-19 outbreak following the death of a passenger who had been on the Mexico trip. The State of California refused to allow the vessel into port in the San Francisco Bay, when it returned from Hawaii. The M/V GRAND PRINCESS was instead forced to anchor off the coast of San Francisco at a distance less than three nautical miles from shore. Governor Newsom stated at a press conference there were 11 passengers and 10 crew members experiencing symptoms.

55.     On or about March 5, 2020, two weeks after the ship sailed from San Francisco to Hawaii, Defendants instituted operational changes, including cabin/state room quarantine, meal service within the cabins/state rooms, and cessation of daily turndown service and communal activities.

56.     On or about March 9, 2020, the ship was permitted to sail and escorted by the Coast Guard, it arrived that day in the San Francisco Bay. The ship docked in the Port of Oakland and was met by ambulances and medical personnel.

57.     On or about March 10, 2020, passengers, including the Decedent, were finally allowed to disembark, and shuttled to Travis Air Force Base in Solano County, California for further quarantine.

58.     At the time of this filing, Defendant CARNIVAL has cancelled future cruises embarking from San Francisco through the end of 2020. However, CARNIVAL's website indicates that it intends to operate certain cruise ships as early as June 26, 2020, potentially posing grave threats to their passengers, crew members, and the public health.[12]

III.     **Decedent Carl E Weidner's Experience**

59.     Decedent CARL E WEIDNER was 74 years old at all times relevant to this

---

[12] *See* Carnival, Health and Safety Updates, https://www.carnival.com/health-and-sailing-updates (last visited April 21, 2020).

Complaint.

60.    Decedent boarded the M/V GRAND PRINCESS on February 21, 2020, for the voyage en route to Hawaii; had Defendants revealed to Decedent the truth about the dangers of the corona virus he would not have left the safety of the Pennsylvania home nor boarded the M/V GRAND PRINCESS.

61.    On or about March 4, 2020, Decedent called his niece and said that passengers onboard the M/V GRAND PRINCESS would be quarantined and that he did not know when the ship would dock, or when he would be allowed to disembark.

62.    While aboard the ship – and less than three nautical miles away from shore – or upon reaching land and while on a bus transport to Travis Airforce Base, Decedent contracted COVID- 19.

63.    On March 9, 2020, after the ship docked, Decedent was allowed to disembark the vessel and was screened for COVID-19 through a body temperature check. The Decedent did not have an elevated body temperature at that time nor did Decedent exhibit other objective symptoms of fever.

64.    On the same day, Decedent was transferred to Travis Air Force Base along with other M/V GRAND PRINCESS passengers who had disembarked from the ship. The bus ride to Travis Air Force Base took approximately three hours and thirty minutes. Defendants provided masks and a lunch bag to each recently disembarked passenger. During the bus ride, the recently disembarked passengers sat near each other in masks. The passengers removed their masks to eat lunch during the bus ride to Travis Air Force Base.

65.    By March 11, 2020, Decedent experienced and showed symptoms of COVID-19, and, on March 11, 2020, he was taken to the hospital at California Pacific Medical Center in the City and County of San Francisco. Decedent was put on a respirator and tested for COVID-19. The Decedent's travel companion and girlfriend (Annette Gibbons), who traveled with the Decedent on M/V GRAND PRINCESS's Hawaii trip, remained at Travis Air Force Base.

66.    On March 13, 2020, Decedent received a diagnosis; he tested positive for COVID-19. Three days later, on March 16, 2020, hospital staff told Decedent he would be put on a ventilator.

67.     Decedent remained on a ventilator for ten days and was placed in a medically induced coma. To protect patients and the public health, Decedent was not allowed any visitors.

68.     On March 26, 2020, Decedent died because of infection related to the COVID-19 virus, which was the direct and proximate result of Decedent's exposure to the virus on the ship due to Defendants' failure to take any effective measures to prevent or mitigate the spread of COVID-19 onboard the M/V GRAND PRINCESS. The infection and death was the proximate result of Defendants' deceptive February 12, 2020 "Emergency Notification" – with false information about the level of safety and danger to which the Decedent would be exposed – that lured Decedent onto the M/V GRAND PRINCESS.

69.     Before boarding and embarking upon the February 21, 2020 roundtrip voyage from San Francisco to Hawaii, Defendants knew or should have known the extreme and actual risks of an outbreak of COVID-19 onboard the M/V GRAND PRINCESS. Defendants had experienced viral outbreak aboard the M/V DIAMOND PRINCESS and were aware or should have been aware that passengers on the immediately preceding voyage aboard the M/V GRAND PRINCESS experienced and reported suffering from COVID-19 symptoms.

70.     Defendants knew the high likelihood of the passengers carrying, spreading, and contracting pathogens, including COVID-19, aboard cruise ships. And—especially given the age demographics of cruise line customers— Defendants' knew the likelihood of passengers suffering severe cases of COVID-19 and the likelihood of passengers dying as a result.

71.     Defendants knew or should have known that they were putting Decedent in actual, extreme, and immediate risk of harm by: failing to notify passengers, including Decedent, of the potential of exposure to COVID-19 onboard the M/V GRAND PRINCESS, by making false statements – about the potential of exposure to COVID-19 onboard the M/V GRAND PRINCESS – that lured the Decedent to board the vessel,  by failing to implement proper procedures to screen and examine passengers, clean and sanitize the M/V GRAND PRINCESS, isolate and/or quarantine M/V GRAND PRINCESS passengers, limit large group activities and events, end the practice of daily turndown service, and/or take other measures to prevent and mitigate the proliferation of COVID-19.

72.     Defendants knew or should have known that by failing to proactively warn

passengers—including Decedent—and by failing to take actions to limit opportunities for viral spread, they risked serious personal injury and/or death to their passengers.

73.   Defendants consciously disregarded the known high probability of injury and/or death and chose to pursue profits rather than protect the public, or protect the M/V GRAND PRINCESS workers and employees, or protect the M/V GRAND PRINCESS customers, including Decedent. Defendants acted negligently, recklessly, carelessly, and maliciously.

**IV.   Relation of Plaintiff's Claims to Class Action Litigation Against Defendants**

74.   A proposed class action lawsuit is filed in the Northern District of California against Defendants PRINCESS and CARNIVAL. The class action alleges claims of negligence, gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.

75.   Although the subject, individual action raises claims besides those included in the class action, there exist numerous questions of law and fact— including those related to Defendants' knowledge, conduct, and duty throughout the events described in this Complaint—common to Plaintiff here and the Plaintiffs and proposed Class in *Archer v. Carnival Corp.*, No.: 3:20-cv-02381 (N.D. Cal.). These common legal and factual issues include, *inter alia*:

a.   what Defendants knew about the presence and risks associated with the COVID-19 virus, and contagions generally, and when they knew it;

b.   whether Defendants should have canceled the subject cruise to avoid exposing passengers to a deadly pathogen and/or taken other steps to avoid exposing passengers to a deadly pathogen;

c.   whether Defendants had a duty to decontaminate the M/V GRAND PRINCESS after they knew or should have known that individuals who had been aboard the M/V GRAND PRINCESS before the subject cruise were or were potentially carriers of the COVID-19 virus, and/or after it had been disclosed two days before embarking on the subject leg of the cruise that passengers on the Diamond Princess had perished due to the COVID-19 virus;

      d.      whether Defendants knew or should have known that passengers and crew who had been aboard the M/V GRAND PRINCESS before the subject cruise were exposed to or were potentially carriers of the COVID-19 virus;

      e.      whether the fact that prior passengers and crew who had been aboard had been exposed to or were potential carriers of the COVID-19 virus constitutes a material fact about which reasonable consumers would have considered in deciding whether to embark on the subject cruise;

      f.      whether Defendants had a duty to disclose that passengers and crew aboard the M/V GRAND PRINCESS before the subject cruise were exposed to or were potentially carriers of the COVID-19 virus, and other relevant information;

      g.      whether Defendants failed to disclose that passengers and crew who had been aboard the M/V GRAND PRINCESS before the subject cruise were or were potentially carriers of the COVID-19 virus and other relevant information;

      h.      interpretation of the applicable contract documents and the associated "Passenger Bill of Rights" incorporated therein;

      i.      whether Defendants acted as alter egos and/or agents, so they should be held jointly liable for the conduct alleged;

      j.      whether CARNIVAL CORPORATION is liable for the acts, omissions, and violations described in this Complaint;

      k.      whether CARNIVAL PLC is liable for the acts, omissions, and violations described in this Complaint; and

      l.      whether PRINCESS is liable for the acts, omissions, and violations described in this Complaint.

## NOTICE

76.      Section 16 (A)(i) of the Passage Contract purports to require that claimants provide notice to PRINCESS and CARNIVAL of any potential claims. Although Plaintiff does not concede this provision is enforceable, Plaintiff complies with this requirement by service of this complaint.

//

//

//

## CLAIMS FOR RELIEF
## FIRST CAUSE OF ACTION- MARITIME COMMON LAW SURVIVAL ACTION NEGLIGENCE

77.    Plaintiff re-alleges all allegations in all preceding paragraphs as if alleged fully herein. Defendants negligence caused injury and damages while the M/V GRAND PRINCESS was located less than three nautical miles from the shore of the State of California or while the decedent was on land traveling on the bus ride to Travis Air Force Base as set out in this complaint.

78.    Defendants owed Decedent CARL E WEIDNER, who was a paying passenger that boarded the M/V GRAND PRINCESS on February 21, 2020, a duty to ensure that he would not be exposed to an unreasonable risk of harm.

79.    Likewise, Defendants owed Decedent a duty to take actions to prevent and mitigate the risk of threats to his health and safety, including by ensuring that the M/V GRAND PRINCESS was thoroughly cleaned, disinfected, and safely maintained.

80.    Defendants knew or should have known that cruise ships pose an especially severe risk of viral outbreak. Defendants knew or should have known that cruise ships owned and operated by Defendants had been the sites of prior, lethal outbreaks of COVID-19, and should have known new guidelines for the cruise industry published by Dr. Hadjichristoulou and a team of European epidemiological experts on February 3, 2020. Defendants knew of the actual risks facing passengers based on, among other facts, the outbreak of the virus on the Diamond Princess, a mere three weeks before the outbreak.

81.    Defendants knew or should have known that passengers traveling on the M/V GRAND PRINCESS had suffered COVID-19 symptoms and that passengers and crew aboard the M/V GRAND PRINCESS's San Francisco-Mexico voyage who remained onboard the vessel for the San Francisco-Hawaii voyage were carriers of the virus, or could have been exposed to and could have been carriers of the virus.

82.    Defendants also knew or should have known that COVID-19 posed especially high risks for adults over the age of 65 and that many of the M/V GRAND PRINCESS passengers, including Decedent, were older than 65.

83.    Defendants failed to do what a reasonably careful cruise ship owner and operator would do under the circumstances.

84.     Defendants breached their duties to the Decedent when, with the aforementioned knowledge, Defendants nevertheless chose to go forward with the San Francisco-Hawaii voyage.

85.     Defendants also breached their duties when, with that same knowledge, they chose not to effectively screen or medically examine any passengers or crew, including the approximately 62 passengers and over 1,000 crew members who had traveled on the San Francisco-Mexico trip and were also traveling on the San Francisco-Hawaii trip.

86.     Defendants further breached their duties to Decedent when, with the above-mentioned knowledge, Defendants boarded, without additional decontamination and screening protocols, over 2,000 passengers, including Decedent, onto the likely-infested ship and negligently chose not to notify those passengers of: the actual risk that the ship was infested with COVID-19 due to prior passengers' infections; the actual and extreme risks of contracting COVID-19 while using facilities on the vessel; and/or the actual and extreme risks of contracting COVID-19 while mingling with passengers and crew who had traveled on the Mexico voyage.

87.     Defendants again breached their duties to Decedent when, throughout the San Francisco-Hawaii voyage, with the aforementioned knowledge, they repeatedly chose not to inform Decedent and his fellow passengers of the continuing and growing risks of contracting COVID-19, and chose not to provide Decedent with the informed option to disembark at one of the vessel's ports of call.

88.     And Defendants breached their duties to the Decedent when, by February 25, 2020, Defendants repeatedly failed to notify passengers aboard the M/V GRAND PRINCESS during the San Francisco-Hawaii voyage that passengers on the Mexico voyage had been diagnosed with COVID-19, that at least one had died, and that certain passengers and crew from that trip remained onboard the M/V GRAND PRINCESS. Defendants breached their duties to Decedent when, after notifying prior M/V GRAND PRINCESS passengers of their potential exposure on February 25, 2020, Defendants continued choosing to not alert passengers on the subject voyage, including Decedent, until the morning of March 4, 2020.

89.     Finally, Defendants continued to breach their duties to Decedent, throughout the duration of the M/V GRAND PRINCESS's San Francisco-Hawaii voyage, with the

aforementioned knowledge and with no warning to the passengers onboard, when they, *inter alia*, chose not to implement quarantine or social distancing protocols; chose to continue operating large, public gatherings, communal activities, and meals—which they encouraged passengers to attend; and chose to continue to operate daily turndown service.

90.     It was reasonably foreseeable that – due to Defendants' choices, acts, omissions, and negligent behaviors – passengers, including the Decedent, would suffer serious injuries and/or illness, suffer complications from those injuries and/or illness, and die.

91.     As a direct and proximate result of Defendants' wrongful acts and outrageous failures to safeguard Decedent, Decedent contracted COVID-19 while onboard the M/V GRAND PRINCESS while that ship was less than three nautical miles from the shore of the United States or Decedent contracted COVID-19 while on land traveling on the bus to Travis Air Force Base as further set out.

92.     Decedent was forced to spend days at Travis Air Force Base, was sent to the hospital at California Pacific Medical Center, spent over two weeks in the hospital—ten days of which were endured on a respirator in a medically-induced coma—and died.

93.     As a direct and proximate result of Defendants' wrongful acts and outrageous failures to safeguard Decedent, the Estate of CARL E WEIDNER has sustained and will incur pecuniary damages caused by Decedent's death including funeral and burial expenses, the inability to accumulate further assets, financial contributions decedent would have made to his Estate had decedent lived; the inability to bequeath the lost assets; and other losses, the full nature and extent of which are not yet known to Plaintiff, and leave is requested to amend this Complaint to conform to proof during trial.

94.     Defendants' failure to abide by the guidelines issued on February 3, 2020 – by choosing on February 21, 2020 to not disembark the passengers known to have been in casual contact with individuals who reported COVID-19 symptoms, and were later diagnosed with the virus – constitutes a failure to provide even a modicum of care to Decedent. The continued and repeated choice not to quarantine or otherwise shelter in their cabins the passengers and crew members who traveled on the M/V GRAND PRINCESS San Francisco-Mexico voyage demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and operator would do.

95.    Defendants' choice to not warn Decedent of the actual risk of harm in being exposed to COVID-19, either before boarding or while already onboard (given a prior passenger came down with symptoms and later died), along with failing to warn that passengers from the prior voyage exhibited symptoms, and a crew member disembarked the ship during the voyage due to COVID-19-related illness, constitutes a failure to provide even a modicum of care to Decedent. The continued and repeated choice to provide passengers, including Decedent, no notice of the actual risks facing them demonstrates a willful and conscious disregard for the rights and safety of others and amounts to an extreme departure of what a reasonably careful cruise ship owner and/or operator would do.

96.    Moreover, Defendants demonstrated a willful and conscious disregard for the rights and safety of others and an extreme departure of what a reasonably careful cruise ship owner and/or operator would do through their continued and repeated choices to: not effectively sanitize and disinfect the M/V GRAND PRINCESS either before or during the San Francisco-Hawaii voyage; not institute medical screening and examinations for passengers and crew members; host large social gatherings and meals; conduct daily turn-down service; and not implement quarantine or social distance protocols until on or around March 5, 2020. These decisions manifest Defendants' utter failure to provide even a modicum of care to Decedent.

97.    Defendants prioritized profits over people and continued to operate business as usual, despite their knowledge that the COVID-19 global pandemic and the condition and environment of the M/V GRAND PRINCESS posed an actual, potentially-lethal, risk to the safety and well-being of the general public, their crew, and their passengers, including Decedent.

98.    As a direct and proximate result of Defendants' failure to provide even scant care to Decedent CARL E WEIDNER, Decedent was placed at actual, continual risk of immediate, and deadly, physical harm.

99.    As a direct and proximate result of Defendants' wrongful acts and outrageous failures to safeguard Decedent, Decedent contracted COVID-19.

100.    Decedent was forced to spend days at Travis Air Force Base, was sent to the California Pacific Medical Center hospital, spent over two weeks in the hospital—ten days of which were spent on a ventilator and in a medically-induced coma—and died.

101.    As a direct and proximate result of Defendants' wrongful acts and outrageous failures to safeguard Decedent, Plaintiff sustained wrongful death damages. And Plaintiff incurred wrongful death damages and other losses, the full nature and extent of which are not yet known to Plaintiff, and leave is requested to amend this Complaint to conform to proof during trial.

**SECOND CAUSE OF ACTION- MARITIME COMMON LAW SURVIVAL ACTION FRAUD**

102.    Plaintiff re-alleges all allegations in all preceding paragraphs as if alleged fully herein.

103.    On February 12, 2020 Defendants sent a communication to Decedent's home in Lehigh County Pennsylvania entitled "Emergency Notification". Defendants knew this communication contained false information upon which Decedent would rely to his detriment. The false statements in that communication were: Defendants were "monitoring the situation with coronavirus that originated from China"; Defendants' "medical experts were working with global health authorities"; and, "all guests will be subject to pre boarding health reporting and enhanced screening at check in". With these false statements the Defendants lured Decedent onto the M/V GRAND PRINCESS without revealing to the Decedent the dangerous circumstances aboard the M/V GRAND PRINCESS, which ultimately lead to Decedent's death from COVID-19 as plead.

104.    When the Decedent arrived in California and before boarding the M/V GRAND PRINCESS, Defendants knew of the February 12, 2020 false and misleading statements sent to Decedent's Pennsylvania home. Yet, Defendants continued to mislead the Decedent into boarding their ship by failing to disclose the danger to which Decedent would be subjected should he elect to board the M/V GRAND PRINCESS.

105.    Defendants made representations to the Decedent in writing on February 12, 2020. The representations were material to the transaction at hand. Defendants falsely made the communication with knowledge of its falsity or with recklessness as to its truth or falsity. Defendants did so with the intent of misleading Decedent into relying on that false communication and board Defendants' ship without knowledge of the dangers the Decedent would face on the vessel. Decedent justifiably relied on Defendants' misrepresentations, and

Decedent's death was proximately caused by the reliance.

### THIRD CAUSE OF ACTION-MARITIME COMMON LAW SURVIVAL ACTION INTENTIONAL INFLICTION EMOTIONAL DISTRESS

106.   Plaintiff re-alleges all allegations in all preceding paragraphs as if alleged fully herein.

107.   The Decedent was infected by COVID 19 within the territorial waters of the State of California, less than three nautical miles from the coast of the State of California or on land after having boarded the bus to Travis Air Force Base.

108.   The Decedent was intentionally subjected to objectively outrageous and shocking conduct within the territorial waters of the State of California.

109.   The Decedent suffered emotional distress, pain, suffering because of Defendants' conduct and the acts complained of herein.

110.   As a direct and proximate result of Defendants' wrongful acts and outrageous failures to safeguard Decedent, Plaintiff sustained damages before his death as plead in this cause of action.

### FOURTH CAUSE OF ACTION-MARITIME COMMON LAW SURVIVAL ACTION NEGLIGENT INFLICTION EMOTIONAL DISTRESS

111.   Plaintiff re-alleges all allegations in all preceding paragraphs as if alleged fully herein.

112.   The Decedent was negligently subjected to objectively outrageous and shocking conduct within the territorial waters of the State of California.

113.   As a direct and proximate result of Defendants' wrongful acts and outrageous failures to safeguard Decedent, Plaintiff sustained damages before death as plead in this cause of action.

### FIFTH CAUSE OF ACTION-MARITIME COMMON LAW SURVIVAL ACTION NEGLIGENT MISREPRESENTATION

114.   Plaintiff re-alleges all allegations in all preceding paragraphs as if alleged fully herein.

115.   Defendants negligently falsely informed the Decedent in their "Emergency Notification" of February 12, 2020 as further set out. Defendants' misrepresentations caused the Decedent physical harm. The harm was caused by the Decedent boarding the Defendants' ship upon Decedent's reasonable reliance upon information that it was safe to do so.

Decedent's boarding of the ship as a proximate cause of Defendants' negligent misrepresentations resulted in harm to the Decedent. Defendants failed to exercise reasonable care in ascertaining the accuracy of the information in the aforementioned "Emergency Notification" of February 12, 2020 or in the manner it was communicated.

116.    On February 12, 2020 Defendants negligently misrepresented to the Decedent the safety of boarding its ship. Defendants sent a communication to Decedent's Pennsylvania home entitled "Emergency Notification". Defendants knew or should have known this communication contained false information, false assertions of fact, implied Defendants' ship was safe to board, and that the Decedent would and did rely upon the communication to his detriment. The false statements in that "Emergency Notification" were: that Defendants were "monitoring the situation with coronavirus that originated from China", that Defendants' "medical experts were working with global health authorities", that "all guests will be subject to pre boarding health reporting and enhanced screening at check in". The Decedent was lured by Defendants from his home in Pennsylvania with the use of these false express and implied statements regarding the safety of boarding its ship. Defendants lured Decedent into boarding the unsafe M/V GRAND PRINCESS in the State of California without first revealing to the Decedent the dangerous circumstances aboard the M/V GRAND PRINCESS. The dangerous circumstances lead to the Decedent's death from COVID-19 as plead.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them:

1.    For damages arising from the wrongful acts complained of herein.

2.    An award of attorneys' fees and costs, as allowed by law;

3.    An award of pre-judgment and post-judgment interest, as provided by law;

4.    For such other and further relief as the Court deems just and proper.

5.    For Punitive Damages.

Dated: July 20, 2020                        Respectfully submitted,

By:   /s/ J. David Nick
      J. David Nick, Esq.
      Russell L. Goodrow, Esq.
      *Attorneys for Plaintiff*

EXHIBIT 1

# PRINCESS CRUISES
come back new®

**Emergency Notification**

## BOOKING XNCR6W

**February 12, 2020**

Mr Carl Weldner
(610) 573-7647
3312 S 5th Ave Apt 166
Whitehall, PA, 18052-3040

| | | Anytime Dining / Confirmed |
|---|---|---|
| Voyage / Dest: | A006 / 15 Days Hawaii/Roundtrip San Francisco  Dining Request: | |
| Ship / Registry: | Grand Princess / Bermudan | |
| Embarkation: | February 21, 2020 / San Francisco | |
| Disembarkation: | March 7, 2020 / San Francisco | |
| Stateroom / Cat: | B639 / BD    Beds: Queen Bed | |
| Deck Group: | Middle | |
| Ship Zone. | Aft | |

## IMPORTANT NOTICES

### CORONAVIRUS TRAVEL ADVISORY

We're monitoring the situation with the coronavirus that originated in mainland China, and our medical experts are working with global health authorities. As a precaution, anyone who has traveled from or through mainland China, Macau or Hong Kong (including airport transits), or has had contact with a suspected or confirmed case of coronavirus (2019-nCoV) within 14 days of the start of this cruise will not be allowed to board the ship. If this applies to you or your client, please contact us with proof of this travel for a full refund of the amount paid to Princess Cruises. All guests will also be subject to pre- boarding health reporting and enhanced screening at check-in. Due to changing circumstances, it is possible that authorities in the countries on your cruise may change their entry requirements on short notice. Please check all entry requirements prior to your arrival to the ship to ensure you are not impacted. Guest passports will be scanned to verify compliance. False responses on forms will result in immediate debark at the next opportunity, and you may face legal consequences. We may change requirements to safeguard guests and crew.

Thank you for your attention to this notification.

### PASSENGERS

| Name: | Mr Carl Weldner | Mrs Annette Gibbons | Totals |
|---|---|---|---|
| Middle Name: | Edward | Nmn | |
| Age: | 74 | 77 | |
| Member Number: | 624917522A | 8806921716 | |
| Vacation Protection: | None | None | |
| Air: | No | No | |
| Air City: | | | |

### BOOKING ITINERARY

| Date | Description | Start | End | Date | Description | Start | End |
|---|---|---|---|---|---|---|---|
| Feb 21 | No Transfer To Ship | | | Feb 29 | Hilo | 8:00AM | 5:00PM |
| Feb 21 | San Francisco | | 4:00PM | Mar 01 | At Sea | | |
| Feb 22 | At Sea | | | Mar 02 | At Sea | | |
| Feb 23 | At Sea | | | Mar 03 | At Sea | | |
| Feb 24 | At Sea | | | Mar 04 | At Sea | | |
| Feb 25 | At Sea | | | Mar 05 | Ensenada | 4:00PM | 8:00PM |
| Feb 26 | Kauai (Nawiliwili) | 8:00AM | 5:00PM | Mar 06 | At Sea | | |
| Feb 27 | Honolulu | 7:00AM | 11:00PM | Mar 07 | San Francisco | 7:00AM | |
| Feb 28 | Maui (Lahaina)  Water Shuttle Required  Wheelchair Access Limited | 7:00AM | 6:00PM | Mar 07 | No Transfer From Ship | | |

**IMPORTANT NOTICE:** Upon booking the Cruise, each Passenger explicitly agrees to the terms of the Passage Contract (
https://www.princess.com/legal/passage_contract/pcl.html).  Please read all sections carefully as they affect the passenger's legal rights, particularly with respect to cancellation (Section 6),.the provision of medical care (Section 13)and the Carrier's liability and your right to sue (Sections 14-16).