UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA L CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>PRINCESS CRUISE LINES LTD., et al.,<br><br>Defendants. | Case No. 20-cv-04955-HSG<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 22 |

Pending before the Court is the motion to transfer this action to the Central District of California, filed by Defendants Princess Cruise Lines, Ltd., Carnival Corporation, and Carnival plc. Dkt. No. 22. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). Having carefully considered the parties' arguments, and for the reasons detailed below, the Court **GRANTS** the motion to transfer.

## I. BACKGROUND

Plaintiff Brenda Campbell filed this admiralty action on behalf of the Estate of Carl E. Weidner on July 23, 2020, asserting several tort claims based on the death of Mr. Weidner following his time aboard a cruise ship, the *Grand Princess*, owned and operated by Defendants. *See* Dkt. No. 1 ("Compl."). Plaintiff alleges that, despite knowledge of the risks of COVID-19, Defendants issued an "Emergency Notification" to their passengers in advance of Mr. Weidner's voyage, indicating that the *Grand Princess* would be safe to board. *See id.* at ¶ 44, & Ex. A. Plaintiff further alleges that Defendants learned of outbreaks of COVID-19 aboard several of their other cruise ships and of at least one passenger with COVID-19 symptoms aboard the *Grand Princess*, but failed to take proper precautions. *See id.* at ¶¶ 31–43, 46, 48–53, 69–73. Plaintiff asserts that Mr. Weidner relied on Defendants' representations about the safety of the trip and

boarded the *Grand Princess*, where he contracted COVID-19. *Id.* at ¶¶ 44–46, 60, 62. Shortly after disembarking, Mr. Weidner tested positive for COVID-19, and on March 26, 2020, he died "because of infection related to the COVID-19 virus." *See id.* at ¶¶ 63–68.

In support of its motion to transfer this action to the Central District of California, Defendants cite to their booking records, which indicate that Mr. Weidner booked the cruise on the *Grand Princess* on December 23, 2019. *See* Dkt. No. 22-1 at ¶¶ 3, 18. Defendants then sent Mr. Weidner an email, which contained a "Booking Confirmation PDF." *See id.* at ¶ 3. The email and PDF prompted Mr. Weidner to complete mandatory additional booking information, including reading and accepting the terms of the Passage Contract. *Id.* at ¶¶ 4–9, & Exs. A–B. The bottom of the PDF reads:

> **IMPORTANT NOTICE**: Upon booking the Cruise, each passenger explicitly agrees to the terms of the Passage Contract (http://www.princess.com/legal/passage_contract/). Please read all sections carefully as they affect the passenger's legal rights.

*Id.* at Ex. B. Defendants state that Mr. Weidner accepted the terms of Defendants' Passage Contract on approximately January 3, 2020. *See id.* at ¶¶ 7–10, 18. As relevant to this motion, in a section titled "Forum and Jurisdiction for Legal Action," the Passage Contract states:

> Claims for Injury, Illness or Death: All claims or disputes involving Emotional Harm, bodily injury, illness to or death of any Guest whatsoever, including without limitation those arising out of or relating to this Passage Contract or Your Cruise, shall be litigated in and before the United States District Courts for the Central District of California in Los Angeles, or as to those lawsuits over which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Los Angeles County, California, U.S.A., to the exclusion of the courts of any other country, state, city, municipality, county or locale. You consent to jurisdiction and waive any objection that may be available to any such action being brought in such courts.

*Id.* at ¶ 15; *see also* Dkt. No. 22-4, Ex. C at 20. Based on this provision, Defendants contend that this action should be transferred to the Central District of California.

## II. LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The transfer statute exists "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation omitted). Under § 1404(a), a case may be "transfer[red] to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013). The Supreme Court has explained that "Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.*

### III.   DISCUSSION

The Supreme Court has stated that forum selection clauses in commercial cruise ticket contracts are generally enforceable and "should be given controlling weight in all but the most exceptional cases." *See Atl. Marine Const.*, 571 U.S. at 59–60; *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–594 (1991). The Supreme Court has further explained that "[a] cruise line has a special interest in limiting fora in which it potentially could be subject to suit . . . ." *Carnival*, 499 U.S. at 593. First, "because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject a cruise line to litigation in several different fora." *Id.* Additionally, the Court reasoned that forum selection clauses dispel "any confusion about where suits arising from the contract must be brought and defended." *Id.* at 593–94. Lastly, the Court noted that "passengers who purchase tickets containing a forum clause . . . benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued." *Id.* at 594. Accordingly, the Supreme Court has cautioned that forum selection clauses should be upheld "unless enforcement is . . . unreasonable" or violates principles of "fundamental fairness." *See, e.g.*, *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972); *Carnival*, 499 U.S. at 595. Plaintiffs seeking to defeat enforcement of forum selection clauses therefore bear a "heavy burden." *See A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1084 (9th Cir. 2018).

1  Here, Defendants argue that the forum selection clause in the Passage Contract is valid and
2  enforceable. *See* Dkt. No. 22 at 5–12. In response, Plaintiff argues that the Court should not
3  enforce the forum selection clause because (1) the forum selection clause is too vague; and
4  (2) Defendants engaged in fraud by minimizing the danger from COVID-19 that Mr. Weidner
5  faced in boarding the *Grand Princess*. *See* Dkt. No. 34 at 7–15.

### A.  Notice

As an initial matter, Plaintiff does not appear to contest that Mr. Weidner had notice of and agreed to the Passenger Contract, including the forum selection clause. *See* Dkt. No. 34 at 7–15. Rather, Plaintiff posits that the forum selection clause itself is vague, and therefore Plaintiff was free to file in any federal district court, including in the Northern District of California. *Id.* at 7–9. Plaintiff contends that the forum selection clause is permissive rather than mandatory because it "does not contain language clearly requiring exclusive jurisdiction" in the Central District of California. *Id.* at 7 (quotations omitted). More specifically, Plaintiff points out that the clause states that all bodily injury claims "shall be litigated in and before the *United States District Courts* for the Central District of California in Los Angeles," and emphasizes that "United States District Courts" is plural. *Id.* at 7–8 (emphasis added); *see also* Dkt. No. 22-4, Ex. C at 20. She further notes that the forum selection clause does not explicitly preclude filing in other federal district courts. *See* Dkt. No. 34 at 8–9. The Court is not persuaded, and finds that Plaintiff's argument borders on frivolous.

"A cruise line passage contract is a maritime contract governed by general federal maritime law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 834 (9th Cir. 2002). Maritime contracts "must be construed like any other contracts: by their terms and consistent with the intent of the parties." *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004). Therefore, consistent with general principles of contract interpretation, the plain language of a contract governs. *See id.* at 31–32. And a contract is only ambiguous if "it is susceptible of two reasonable and practical interpretations." *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 179 (2d Cir. 2014) (emphasis omitted).

Plaintiff attempts to read portions of the forum selection clause in isolation to suggest that

it is ambiguous. But when read in its entirety, as is required, the forum selection clause is clear. It states that "[a]ll claims or disputes involving Emotional Harm, bodily injury, illness to or death of any Guest whatsoever . . . shall be litigated in and before the United States District Courts for the Central District of California in Los Angeles . . . ." *See* Dkt. No. 22-4, Ex. C at 20. To the extent Plaintiff takes issue with "United States District Courts" being plural rather than singular, the phrase is nevertheless modified by "for the Central District of California in Los Angeles." *Id.* Thus, if a passenger files any lawsuit about his or her illness or death on the cruise, it must be filed in "the Central District of California in Los Angeles." *Id.*

The remaining language in the forum selection clause merely clarifies that for lawsuits over which the federal courts lack subject matter jurisdiction, such lawsuits "shall be litigated . . . before a court located in Los Angeles County, California, U.S.A." *See id.* Nothing in the clause permits lawsuits to be brought in the Northern District of California, or any other federal district court for that matter. To the extent there was any remaining doubt, the clause further states that these fora are "to the exclusion of the courts of any other country, state, city, municipality, county or locale." *Id.* Plaintiff accepts that there is federal jurisdiction over this case, *see* Compl. at ¶¶ 19–20, so absent some other basis to set aside the forum selection clause, this case should have been filed in "the United States District Courts for the Central District of California in Los Angeles." *Id.* Plaintiff's proffered interpretation to the contrary is simply unreasonable and not supported by the plain language of the Passenger Contract.

**B.     Fraud**

Plaintiff next argues that "[i]t would be unjust and unreasonable to enforce the Passage Contract's venue provision" because Defendants "lure[d] Mr. Weidner to board [the *Grand Princess*] with the use of false promises of safety . . . ." *See* Dkt. No. 34 at 9. Plaintiff thus suggests that any allegations of fraud, regardless of their connection to the forum selection clause, render the enforcement of the forum selection clause inherently unfair. *Id.* at 10–11. As Plaintiff notes, "the seminal case on maritime venue selection clauses," *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), provides that such a clause may be "invalid for such reasons as fraud or overreaching." *Id.* at 12–13. However, the Supreme Court later clarified this fraud exception,

5

stating that it "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if *the inclusion of that clause in the contract* was the product of fraud or coercion." *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, n.14 (1974) (citing *Bremen*, 407 U.S. at 13) (emphasis added); *see also Carnival*, 499 U.S. at 595 (holding that a forum selection clause should have been enforced because "there [wa]s no evidence that petitioner obtained respondents' accession to the forum clause by fraud or overreaching"). In other words, the party seeking to invalidate a forum selection clause must show that the forum selection clause itself was fraudulently included in the agreement, not that the entire agreement was the product of fraud. *Id.*; *see also Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) ("[S]imply alleging that one was duped into signing the contract is not enough.").

Plaintiff does not identify, either in the complaint or in her opposition brief, any fraud related to the forum selection clause. Rather, the complaint alleges that Defendants failed to disclose the risk of COVID-19 to Mr. Weidner in the February 12, 2020 "Emergency Notification" and before he boarded the *Grand Princess* on February 21, 2020. *See* Compl. at ¶¶ 103–104. According to Plaintiff, Defendants made the following false and misleading statements:

- Defendants were "monitoring the situation with coronavirus that originated from China";
- Defendants' "medical experts were working with global health authorities"; and
- "[A]ll guests will be subject to pre boarding health reporting and enhanced screening at check in."

*See id.* at ¶ 103. Yet all of these representations were made after Mr. Weidner agreed to the Passenger Contract, and none pertain to the forum selection clause.

Plaintiff urges that Mr. Weidner did not agree to the Passenger Contract until he boarded the *Grand Princess* on February 21, 2020. *See* Dkt. No. 34 at 11–12. She states that "[i]t is that act (i.e., boarding the ship) that provides reasonable certainty of the passenger's agreement to the

6

1  passage contract's terms and that they have had sufficient time to read the terms and consider them
2  before boarding." *Id.* at 12.  This argument, however, is wholly unsupported by case law, and
3  Plaintiff cites no authority for such a novel approach to contract formation.  As noted above,
4  passenger cruise contracts "must be construed like any other contracts." *See Norfolk*, 543 U.S. at
5  31.  And "clickwrap" agreements made through websites, where a user is presented with the terms
6  and conditions and must click on a button or box to indicate that he agrees before he may
7  continue, are considered valid and enforceable.  *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763
8  F.3d 1171, 1175–77 (9th Cir. 2014).  Here, Mr. Weidner not only agreed to the Passenger
9  Contract, but he had ample opportunity to review it.  He accepted the terms of the Passage
10 Contract on January 3, 2020, over a month before boarding the *Grand Princess*.  *See* Dkt. No. 22-
11 1 at ¶ 18; *accord Oltman v. Holland Am. Line, Inc.*, 538 F.3d 1271, 1276–77 (9th Cir. 2008)
12 (finding passengers had sufficient time to review cruise contract when they received it at the time
13 of their departure and "were free to read [it] at their leisure").

14 To the extent that Plaintiff suggests that, irrespective of allegations of fraud, the forum
15 selection clause still violates principles of fundamental fairness, *see* Dkt. No. 34 at 12–15, the
16 Court is not persuaded.  The Supreme Court has recognized that "forum-selection clauses
17 contained in form passage contracts are subject to judicial scrutiny for fundamental fairness."
18 *Carnival*, 499 U.S. at 595.  Such signs of unfairness may include using a forum selection clause
19 "as a means of discouraging cruise passengers from pursuing legitimate claims" or other such
20 "bad-faith motive[s]."  *Id.*  In support of this argument, Plaintiff cites to *Walker v. Carnival
21 Cruise*, 107 F. Supp. 2d 1135 (N.D. Cal. 2000), in which the district court found that due to the
22 plaintiffs' severe disabilities and limited financial means, enforcing the forum selection clause
23 would effectively deny the plaintiffs their day in court.  *See Walker*, 107 F. Supp. 2d at 1140–41.
24 Yet critically, Plaintiff makes no effort to explain how requiring passengers to file lawsuits in the
25 Central District of California, rather than the Northern District of California, would discourage
26 passengers from pursuing their legitimate claims generally, or deny Plaintiff her day in court more
27 specifically.  Indeed, Plaintiff in this case is a resident of Pennsylvania and her lead counsel is
28 based in Pennsylvania.  *See* Compl. at ¶ 4.  Any difference in travel distance between the Northern

District and Central District is thus negligible.

The Court does not in any way minimize the tragedy of Mr. Weidner's death.  But on the record before it in this case, the Court cannot find any hardships that would make enforcement of the forum selection clause unreasonable or unfair.  The Court finds that Plaintiff has not met her burden of establishing that this is one of the few "exceptional cases" where the forum selection clause should not be enforced.  *See Atl. Marine Const.*, 571 U.S. at 59–60.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion to transfer.  The Clerk is directed to transfer this case to the United States District Court for the Central District of California and to close the case.

**IT IS SO ORDERED.**

Dated: 1/8/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge